## UNITED STATES v. HALE et al.

(Circuit Court of Appeals, Eighth Circuit. August 6, 1925.)

No. 6662.

**Waters and water courses ⬦⟹111—Evidence held to show existence of meandered lake.**

Evidence *held* to show lake meandered by government surveyors was in fact lake, and that it was correctly meandered as affecting claims of riparian owners to dry bed.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit by the United States against Kate Hale and another. Decree for defendants, and plaintiff appeals. Affirmed.

George A. H. Fraser, Sp. Asst. Atty. Gen., for the United States.

Sam Costen, of Memphis, Tenn. (Wils Davis, of Memphis, Tenn., on the brief), for appellees.

Before SANBORN, LEWIS, and BOOTH, Circuit Judges.

LEWIS, Circuit Judge. Appellant brought this suit in July, 1920, to quiet its claimed title to 2,200 acres of land in Mississippi county, Arkansas. Appellees answered that the 2,200 acres was the old bed of Young's Lake, that they and their grantors before them owned all of the land surrounding and abutting the lake, and through riparian rights the old bed belonged to them.

This is a companion case to United States v. Rhodes (C. C. A.) 3 F.(2d) 771; and the determining issues of fact under the pleadings here, as in that case, are, first, was Young's Lake in fact a lake, and if so, secondly, had it been correctly meandered out. Young's Lake was about six miles north of Golden Lake, which was under consideration in the Rhodes Case. The evidence in this case and that one was taken at the same time, many of the witnesses testified in both cases, including those who spoke as experts and those who spoke from personal knowledge of the situation. There is the same conflict in the testimony in this case that we found in the Rhodes Case, between laymen and between experts on both questions of fact, whether there was a lake and whether there had been a true meander line. Daniel Miller, who made the original survey of the townships surrounding Golden Lake in 1823, surveyed the township surrounding Young's Lake in 1824, and when the lines which he then ran reached the lake he noted that fact and set a corner.

The next government agent who dealt with the subject was John W. Garretson. In February, 1846, he resurveyed the township, meandered the lake, and the meander line laid down by him was retraced by appellant's agents before the evidence was taken. O. W. Gauss, a special agent of the General Land Office, was sent out in 1910 to examine Golden Lake and Young's Lake. With assistants he made a thorough investigation of both and reported that he did not believe that appellant had any cause to assert title to the land that had been the beds of these lakes, because he was convinced that they were lakes and that each had been properly meandered. Nevertheless, appellant in 1918 caused the lands in this suit to be surveyed, and in May, 1920, asserted the right to open them to homestead entries. Several years prior thereto a drainage ditch had been constructed into the old lake. Mr. Gauss made his investigations of Young's Lake in the winter of 1910-11. At that time the area was full of water and frozen over. He testified at length as a witness for appellees just what he did and what he found at that time, and stated that Young's Lake was a lake when he went there and that from his investigations he had no doubt it was a lake when it was meandered in 1846. It was formed in the same way as Golden Lake, an oxbow lake. He and other witnesses described the basin in which it was situate. The rim of the watershed which encircled it was from a half-mile to a mile or more from the meander line.

There can be no doubt, in our opinion based on the evidence, that the depth, volume and extent of water was much greater at the time it was meandered, and for many years thereafter, than it has been since the construction of St. Francis Levee between it and the river about 1894, and the Devil's Elbow Cut-Off which happened in 1876, the effect of both of which we considered in the Rhodes Case. They lowered its waters. The process of filling had been going on before either of those events, from cultivation of the watershed and from overflows of the river into it. Witnesses who knew it for many years testified to its standing up to the meander line as retraced and at times out beyond it. There was boating, fishing and duck hunting. The drainage ditch emptied it. It was not swamp and overflowed lands, as counsel for appellant tries to make out. The water was 8 and 10 feet deep in places in the '70's and '80's. Nearer the meander line there was tree growth toler-

ant of water, but there the water was from a few inches to several feet in depth. Timber growth was a point of controversy, as in the other case, and the evidence as to that is the same in each. In all respects the two cases are substantially alike in their facts, and the principles of law to be applied are the same in this case as in the Rhodes Case. We see no purpose in a lengthy review of the facts or a restatement of the law. A perusal of the record convinces us that Young's Lake was in fact a lake in 1846 and thereafter, that it was properly meandered by surveyor Garretson in that year, that riparian rights of abutting owners thereafter attached and became fixed and that all of the lands in controversy belong to them, that appellant has no interest therein and that the learned District Judge did not err in dismissing the bill.

Affirmed.